# UNITED STATES DISTRICT COURT

for the
Southern District of Illinois

Omar Ashanti Johnson )
)
)
)
Plaintiff(s) )    Case Number: 25-CV-00702-SMY
v. )    (Clerk's Office will provide for **new** cases, if you are filing
)    in an existing case, write your case number)
Latoya Hughes, )
Anthony Wills, )
~~Kevin Reichert~~ )    ☐ ORIGINAL COMPLAINT
)
)    ☒ AMENDED COMPLAINT (First)
Defendant(s) )

---

**You are responsible for protecting sensitive information per Federal Rule of Civil Procedure 5.2. This means you should not file things like social security numbers, the year of a person's birth, or financial account information.**

---

## I.    JURISDICTION:

☐    I am suing for a violation of federal law under 28 U.S.C. § 1331:

☒ 42 U.S.C. § 1983 (state prisoners);
☐ *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) (federal prisoners);
☐ 28 U.S.C. §§ 1346, 2671-2680 (Federal tort claims act).

☐    Other (provide an explanation):

## II.    PARTIES:

**Plaintiff(s) (use extra pages if needed):**

Name: _Omar Ashanti Johnson_ ⬛⬛⬛

Address: PO Box 1000 / Menard, IL 62259

Inmate ID Number: K74565

Rev. 04/16/2025

1 of 15

**Defendants (use extra pages if needed):**

If you do not know the name of a defendant, assign them a generic name (John Doe 1, John Doe 2, Jane Doe 1). Give any information you have about them here. If you cannot provide identifying information, the Court will not be able to give you steps to try to identify the unknown person, and this party may be dismissed.

For example: Jane Doe 1, the nurse who passes out night-time medication. She is short and has red hair. I saw her at my cell on January 1, 2001.

**Defendant # 1:**

Name: Latoya Hughes

Job: Director of IDOC

Address: 1301 Concordia Court, Executive Office Building

Additional info: _____

**Defendant #2:**

Name: Anthony Wills

Job: Warden of Menard Correctional Center

Address: 711 KasKasKia St. / Menard, IL 62259

Additional info: _____

**Defendant #3:**

Name: _____

Job: _____

Address: _____

Additional info: _____

Rev. 04/16/2025

2 of 15

## II.    PREVIOUS LAWSUITS

A.    Have you begun any other lawsuits in state or federal court while you were in prison or jail (during either your current or a previous time in prison or jail), e.g., civil actions brought under 42 U.S.C. § 1983 (state prisoner), 28 U.S.C. § 1331 (federal prisoner), 28 U.S.C. §§ 1346, 2671-2680, or other law?  ☒Yes ☐No

B.    If your answer to "A" is YES, describe each lawsuit in the space below.  If there is more than one lawsuit, you must describe the additional lawsuits on another sheet of paper using the same outline.  **List ALL lawsuits in any jurisdiction and indicate the court where they were filed to the best of your ability,** including those that resulted in the assessment of a "strike" under 28 U.S.C. § 1915(g) and/or those that were dismissed for being frivolous, malicious, or for failure to state a claim (see 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2); Federal Rule of Civil Procedure 12(b)(6)).  FAILURE TO FULLY DISCLOSE YOUR LITIGATION HISTORY, INCLUDING "STRIKES," MAY RESULT IN SANCTIONS THAT INCLUDE DISMISSAL OF THIS ACTION.

1.    Parties to previous lawsuits:
Plaintiff(s):  Omar Johnson Ashanti

Defendant(s):  Rachida Tellier

2.    Court (if federal court, name of the district; if state court, name of the county):    S D I L

3.    Docket number:

4.    Name of Judge to whom case was assigned:

5.    Type of case (for example: Was it a habeas corpus or civil rights action?):  Civil Rights  (Medical Deference)

6.    Disposition of case (for example: Was the case dismissed?  Was it appealed?  Is it still pending?):  Dismissed on summary Judgment; No appeal

Rev. 10/3/19

3 of 15

II. Previous LAWSUITS (Cont'd)

Parties to previous lawsuit:
Plaintiff: Omar Johnson Ashanti
Defendant:                    Hulick
Court: SDIL
Docket number:
Name of Judge assigned to case:
Type of case:   Civil Rights   (Conditions, 2nd hand Smoke)
Disposition: Voluntarily dismissed (with prejudice)
Approximate date of filing lawsuit:
Approximate date of disposition:
The court told me I received a "strike"


Parties to previous lawsuit:
Plaintiff: Omar Ashanti Johnson
Defendant(s): Harner, Keim
Court: SDIL
Docket number:
Name of Judge assigned to case:
Type of case: Civil Rights (Religious Accomodations)
Disposition: Settled
Approximate date of filing lawsuit:
Approximate date of disposition:

4 of 15

Parties to previous lawsuit:
Plaintiff: Omar Ashanti Johnson
Defendants: Matthew Perry, Dylan "Kroger" Kling
Court: CDIL
Name of Judge assigned to case: Michael M. Mihm
Type of case: 1983 Civil Rights
Approximate date of filing: 12/18/2023
Approximate date of disposition: pending

Parties to previous lawsuit:
Plaintiff: Omar Ashanti Johnson
Defendants: Zachary Hart, et al
Court: SDIL
Name of Judge assigned to case: Stephen P. McGlynn
Type of Case: §1983 Civil Rights /State Tort
Approximate Date of Filing: 1/15/25
Approximate Date of disposition: pending

5 of 15

7.    Approximate date of filing lawsuit:

8.    Approximate date of disposition:

9.    Was the case dismissed as being frivolous, malicious, or for failure to state a claim upon which relief may be granted and/or did the court tell you that you received a "strike?"

III.    **GRIEVANCE PROCEDURE**

A.    Is there a prisoner grievance procedure in the institution? ☒ Yes    ☐ No

B.    Did you present the facts relating to your complaint in the prisoner grievance procedure?    ☒ Yes    ☐ No

C.    If your answer is YES,
1.    What steps did you take?    Counselor, Grievance Officer, and Administrative Review Board.

2.    What was the result?    Denial

D.    If your answer is NO, explain why not.    N/A

E.    If there is no prisoner grievance procedure in the institution, did you complain to prison authorities?    ☐ Yes    ☐ No

N/A

F.    If your answer is YES,
1.    What steps did you take?    N/A

Rev. 10/3/19

6 of 15

II.   **PREVIOUS LAWSUITS**

A.   Have you begun any other lawsuits in state or federal court while you were in prison or jail (during either your current or a previous time in prison or jail), e.g., civil actions brought under 42 U.S.C. § 1983 (state prisoner), 28 U.S.C. § 1331 (federal prisoner), 28 U.S.C. §§ 1346, 2671-2680, or other law?   ☐Yes ☐No

B.   If your answer to "A" is YES, describe each lawsuit in the space below. If there is more than one lawsuit, you must describe the additional lawsuits on another sheet of paper using the same outline. **List ALL lawsuits in any jurisdiction and indicate the court where they were filed to the best of your ability,** including those that resulted in the assessment of a "strike" under 28 U.S.C. § 1915(g) and/or those that were dismissed for being frivolous, malicious, or for failure to state a claim (see 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2); Federal Rule of Civil Procedure 12(b)(6)). FAILURE TO FULLY DISCLOSE YOUR LITIGATION HISTORY, INCLUDING "STRIKES," MAY RESULT IN SANCTIONS THAT INCLUDE DISMISSAL OF THIS ACTION.

1.   Parties to previous lawsuits:
Plaintiff(s):

Defendant(s):

2.   Court (if federal court, name of the district; if state court, name of the county):

3.   Docket number:

4.   Name of Judge to whom case was assigned:

5.   Type of case (for example: Was it a habeas corpus or civil rights action?):

6.   Disposition of case (for example: Was the case dismissed? Was it appealed? Is it still pending?):

## V.     STATEMENT OF CLAIM:

Using the space below describe how your constitutional rights were violated (extra pages are *strongly* discouraged):

DO:   Write a **short** statement of what happened with neat handwriting.  Explain **who** violated your rights, **what** each defendant personally did, **when** they did it, **where** they did it, and **why** they did it (if you know why).

DO NOT:   Do not make legal arguments or give citations.   Do not include evidence or exhibits.  You will have a chance later in the case to give evidence and to make arguments.   Do not combine multiple claims that are not related.[2]

Before December 28, 2023, the date Plaintiff was transferred from Hill C.C. to Menard's toxic-air Segregation building, IDOC Intel informed Director Latoya Hughes that the IDOC had a serious and deadly smokeable narcotics (K2, Fentanyl, etc.) problem; that many if not most IDOC facilities were saturated, or near saturated, with the dangerous drugs; that several individuals in IDOC custody had overdosed/died from inhaling the controlled substance; that several staff members had also been injured by coming in contact with the hazardous smoke that is released when the drugs are burned. IDOC Intel further informed Defendant Hughes that the deadly narcotics are introduced to, and enter the IDOC facilities in the form of paper

---

[2] The Court is not required to allow you to join multiple claims in a single case.  The Federal Rules of Civil Procedure 18-21 control joinder of claims and parties.  It is possible if you present many claims or claims that are not related, that the Court will ask you for an amended        plaint or it will divide your claims into separate cases.

Rev. 04/16/2025

that is sprayed, soaked, or otherwise covered with K2, Fentanyl, roach spray, etc, and that the drugs are colorless in this form, making them virtually impossible to detect by the naked eye. So, before December 28, 2023, Defendant Hughes knew that hundreds of individuals in IDOC custody, in most IDOC facilities, were smoking paper drugs causing toxic and noxious gas to fill the air in the facilities, polluting the environments.

Also, before December 28, 2023, the records of the IDOC's Chief Engineer, many grievances from individuals in custody at Menard C.C., and plain common sense had informed Defendant Hughes that the ventilation system — the 19th Century ventilation system — in Menard's Segregation building was dysfunctional/failed and plagued with hazardous dust and black mold.

Nevertheless, Defendant Hughes, in order to make the IDOC's hazardous and deadly smokeable narcotics problem more manageable for her political interest [likely to save face before public scrutiny], unreasonably and deliberately designed, **authorized,** and consented to a policy to concentrate the IDOC's drug problem and its corresponding toxic air in one central location: Menard C.C.

Rev. 04/16/2025

To implement her policy, Defendant Hughes chose to use the IDOC's "disciplinary transfer" tool in order to relocate individuals found guilty of, or under sustained investigation for, buying, selling, or using the deadly drugs to Menard's Segregation building and East Cell House from all other IDOC facilities, concentrating the individuals in Menard.

When Defendant Hughes designed her narcotic-offenders-transfer-to-Menard policy, she knew she would not only be transferring and ~~concen~~ concentrating those individuals in Menard, but that she would also be accomplishing her goal of transferring and concentrating the undetectable, deadly paper drugs into a central location, Menard, where the IDOC throws its waste.

Unfortunately for Plaintiff and nearly 1000 other individuals in custody, Defendant Hughes considers us to be part of the IDOC's disciplinary waste, and our health to be meaningless or negligible. Along with her policy to concentrate an uncontrolable drug problem in Menard C.C., Defendant Hughes contemporaneously implements a policy to concentrate what she considers uncontrolable humans there, also. Stevie Wonder could've forseen the inevitable catostrophic

Rev. 04/16/2025

9 of 15

outcome of those twin policies.

In keeping with the inhumane sentiment that humans may be waste, Defendant Hughes, by her concentration policies, ~~has~~ houses Plaintiff and nearly 1,000 other individuals in an environment that is extremely hazardous and deadly.

Menard C.C. is now toxic environmental smoke central in the IDOC, and hosts perhaps the most deadly and hazardous air in any housing situation in the State of Illinois.

No human with a functioning ofactory system can enter Menard's East Cell House or Segregation building (North 2) without encountering the overwhelming and obvious smell of toxic smoke from deadly smokeable narcotics. (K2, Fentanyl, etc.). All day, everyday.

Defendant Hughes didn't need to rely on Stevie-Wonderish forsight in order to make a constitutional housing decision in this case. She was well aware, by firsthand knowledge, of the harmful mess she had made with her concentration policies before Plaintiff filed his first grievance about the matter.

Plaintiff is sure Defendant Hughes smelled the environmentally overwhelming toxic smoke when she visited Menard's Segregation building in the beginning of January 2024. Her tell was the universal sign of a wrinkled up nose and "stank face" she wore when she toured the building then.

Rev. 04/16/2025

10 of 15

That same month and year, the Plaintiff wrote Defendant Hughes a lengthy letter detailing, among other civil and human rights violations there, the toxic air and failed ventilation system situation in Menard's Segregation building.

Again, in October of 2024, Plaintiff notified Defendant Hughes of the obviously toxic and hazardous air inside the Segregation building and East Cell House, and about the failed ventilation systems in both locations (see grievance appeal to Director Hughes #K4-0924-4385). By then, Defendant was already well aware of the problem; especially after several of Menard's staff members were hospitalized / received emergency medical treatment after falling victim to the harmful effects of the deadly drugs and their toxic smoke in both the East Cell House and Segregation building at Menard in September of 2024. Those events drew the attention of the local news, state legislators, and the federal government. Oh, she knew.

She knows this Plaintiff and nearly 1,000 other individuals are being harmed (physically and mentally) daily from these deadly smoked-out environments. It doesn't take much imaginative prowess to picture hundreds of men with red eyes; to see medical records indicating issues with high blood pressure, kidney and liver problems, and cancer in unnatural amounts; to envision hundreds becoming addicted to the highly addictable drugs whose smoke she concentrated along with us in Menard's East Cell House and Segregation building.

Rev. 04/16/2025

Yes, I have misbehaved under influence of the toxic air. Yes, I have suffered hallucinations (psychosis); yes, I do have ever-red eyes; yes, I do suffer headaches and diahrrea and other withdrawal symptoms when I'm away from Menard (on court writs at NRC); yes, I have been high often from secondhand smoke; all from second-hand smoke in Menard's East Cell House and Segregation buildings.    My kidney numbers are elevated, my cholesterol (produced by the liver) is high, my blood pressure, high. My heart rate increases often throughout my days and weeks in these toxic smoke environments. Absolutely, Defendant Hughes' concentration housing policies are killing me slowly; and she knows it, but doesn't care.

The same can be said for Defendant Anthony Wills. He knows that these buildings are filled with deadly toxic gas (smoke, etc.) He personally avoids entering the East House and Segregation building unless he has outside company coming to tour them.  His nose works fine.  He smells the overwhelming smell of smokeable deadly and addictive drugs filling the air in both buildings. He walks by individuals smoking the drugs. He has a "let 'em smoke" policy.  That's just one of his methods of controlling all of the "uncontrolable" individual Defendant Hughes concentrates in his facility: Keep 'em sedated.

"Let 'em smoke" was his policy before I arrived in December (28th) of 2023, and it still is his policy.

Rev. 04/16/2025

As soon as I landed in Menard's toxic-air Segregation building, I wrote an emergency grievance to Anthony Wills (early January 2024) concerning what I called "Criminal Housing Management", wherein I informed Defendant Wills about, among other hazardous conditions of housing, the obviously failed ventilation system, pervasive black mold and inches-thick dust mites in the vents, and the toxic deadly narcotic smoke that is everpresent and overwhelming in the Segregation building.

Wills disregarded that grievance, and his grievance office never recorded it; Perhaps the criminal charges I alleged made him choose to discard that one in obstructionist form — one of his patterns and practices.

Leaving no room for doubt about whether Defendant Wills knew about the deadly toxic air in the East House and Segregation buildings, in March of 2024, I sent him another emergency grievance (# K4-0324-1398), complaining about the unsafe air conditions and the fact that we nearly 1,000 individuals in custody in the East House and Segregation were confined in that toxic air for nearly 24 hrs/day, for weeks or months at a time.

Just like Defendant Hughes, Defendant Wills knowingly and consciously went through the September 2024 massive staff hospitalization from exposure to toxic air and deadly drugs in the East House and Segregation building (in

Rev. 04/16/2025

13 of 15

Menard's East House and Segregation building). So, yes, your honor, he knew, too, personally, and more intimately than Defendant Hughes. Of course, leaving no room for doubt, I informed him again in emergency grievance #K4-0924-4385, filed to him in September of 2024 (9/6/24).

Truth is, Defendant Wills does not care about the health and safety of this Plaintiff, nor the nearly 1,000 other individuals he houses/keeps in these toxic air environments. He knows K2 and Fentanyl kills humans. That knowledge is common to elementary school kids in the USA. So we won't pretend this Defendant is somehow unaware that it is harmful, deadly, to keep this Plaintiff and nearly 1,000 other individuals in custody in buildings he knows are filled with deadly, addictive smoke from those drugs. Yet, he actively keep us there.

They know. They knew before Plaintiff got to Menard. And they couldn't care less about my health and safety!

That's my claim.

### Relief Requested

Emergency transfer out of Menard's toxic-deadly air environments; compensatory and punitive damages; immunity from any IDOC drug-related charges (offense 203) that Plaintiff may get in the future as a result of becoming addicted to the relevant narcotics through inhalation of the addictive second-hand smoke in IDOC housing environments; expungement of any disciplinary tickets where the influence of the relevant addictive environmental intoxicant may have been a cause of the subject misbehavior.

14 of 15

JURY DEMAND    Yes ☐    No ☐    ☒ doesn't matter

Signed this _____11th_____ day of ___January___, 20 _26_ .

_____
( Signature of Plaintiff)

| Name of Plaintiff:<br>Omar Ashanti Johnson | Inmate Identification Number:<br>K74565 |
|---|---|
| Address:    PO BOX 1000<br>Menard, IL 62259 | Telephone Number:<br>N/A |

15 of 15

ILLINOIS DEPARTMENT OF CORRECTIONS
### RESPONSE TO INDIVIDUAL IN CUSTODY'S GRIEVANCE

| Grievance Officer's Report |
|---|

| | | | |
|---|---|---|---|
| | 09.16.2024 | Date of S.... 09/19/2024 | Grievance # K4-0024-4395 |

**Individual in Custody Name:** Johnson, Omar    **ID#:** K74565

**Nature of Grievance:**

Environmental Conditions

**Facts Reviewed:**

Individual in Custody submitted a grievance dated 09/06/2024 and grieves being in Housing Unit where toxic and hazardous air fills the buildings, endangering the health and safety of himself and other Individuals in Custody. This air quality has caused emergency hospitalizations of several staff. He states staff walk around with masks on but no masks are provided to himself and other Individuals in Custody.

Relief Requested - "That I and all other humans be removed from North 2 and East "housing" units, that my blood be tested for elevated CO2 levels and exposure to other known environmental toxins in North 2 and East "housing" units where I have been confined +23 hrs./days since 12-26-23.

Grievance Office for processing on 09/16/2024

In accordance with DR 501.120, Response to Serious Institutional Disturbances, the CAO may confine committed persons when determined necessary in order to maintain security of the facility or the safety of committed persons, employees or other persons. The confinement of committed persons will be in accordance with the Administrative Directive 05.01.301 Lockdowns. Illegal substances are a dangerous threat to the safety and security of staff and individuals in custody.

--------------------------CONTINUED ON BACK------------------------------>>>>

**Recommendation**

Based upon a total review of all available information, this Grievance Officer recommends the Individual in Custody's grievance be DENIED.

J. Guetersloh - Correctional Counselor 1          Jacob Guetersloh

Print Grievance Officer's Name                      Grievance Officer's Signature

(Attach a copy of Individual in Custody's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response |
|---|

**Action Taken**

Kevin Reichert          Digitally signed by Kevin Reichert
                        Date: 2024.09.27 06:50:41 -05'00'
Chief Administrative Officer's Signature                Date

| Individual in Custody's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must within 30 days after the date of the Chief Administrative Officer's decision be received by the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response if applicable, and any pertinent documents.)

Omar Ceshant Johnson          K74565          10-18-24

Individual in Custody's Signature          ID#          Date

---

*(Handwritten margin notes:)*

This should be CO → (carbon monoxide) not CO₂. That's my error.

OAJ
10-18-24

If the air in the units is toxic enough to hospitalize staff, how is it reasonable that confining individuals in those units is for "the safety of committed persons"?

OAJ
10-18-24

ILLINOIS DEPARTMENT OF CORRECTIONS
**RESPONSE TO INDIVIDUAL IN CUSTODY'S GRIEVANCE** (Continued)

---CONTINUED--->>> Individuals in custody found to be in the possession of drugs will be subject to progressive discipline in accordance with DR 504 and AD 04.02.105, Drug and Alcohol Detection, Sanctions, Invention and Treatment. IDOC has aligned with outside agencies to assist in the detection of illegal substances in Illinois correctional facilities. IDOC is committed to eliminating this threat and protect the health and well-being of employees, contractors, visitors, and committed persons.

Per Administration, masks are provided upon request and are made available in throughout the facility.

↑

This is a lie.

Mask are not made available generally. They are reserved for staff and trustees.

This whole situation is scetchy. The staff seem to be fakin' harm for worker's comp claims. IDK. This warrants investigation.

DA J

10-18-24

Omar Ashanti Johnson
K74565
PO BOX 1000
Menard, IL 62259

October 8, 2024

Administrative Review Board /
Director IDOC
Executive Office Building
1301 Concordia Court
Springfield, IL 62794-9277

Re:    Appeal of Grievance #K4-0924-4385 (Emergent)

## Introduction

Since the night I arrived here in Menard C.C.
(12-28-23), I have complained of toxic air in the
housing unit where I have been kept.
I noticed the noxious smell various types of smoke
and mildew as soon as I entered the front
door of North 2. The building smells like a smoke
house at all times.
The shocking thing to me was that no staff
member seemed alarmed or in any way concerned

about the overwhelming and obvious smell of smoke, ETS, etc. Staff ignored not only the smells of smokes, but also the sources. They literally walked on by individuals openly burning paper, milk cartons, drugs, etc. It was obvious to me that Menard's smoking, ETS, and drug policy in North 2 was of the "turn-a-blind-eye" philosophy.

About a week later, I filed a grievance against Anthony Wills (Men CAO) and Major Hassemeyer (North 2 Maj.) for Criminal Housing Management for allowing the conditions in North 2 to become and remain dangerously hazardous to the health and safety of the individuals in North 2. I included an Article XI, Section 2 (Ill. Const.) claim. That grievance was discarded/destroyed without record or response.

In March, 2024, I was living in the East Cell House (Men C.C.), and I noticed the same level of toxic air in that housing unit and the same cavalier and nonchalant attitude from the staff in the ECH that I had notice in North 2. Clearly, smoke, ETS, smoking was acceptable and allowed by the vast majority of the ECH staff.

In response, I filed Grievance #K4-0324-1398, complaining of the unsafe air conditions in the ECH where I was confined +23hrs/day. On March 18, 2024, that grievance was deemed emergent. On March 26, 2024, the GOs response to that grievance was "forwarded to CAO", according to Counseling Summary 3-26-24 (Johnson K74565). I have yet to receive a response from the CAO. Finally, on September 6, 2024, I filed the present grievance (#K4-0924-4385) against Anthony Wills and Kevin Reichert for Criminal Housing Management, Reckless disregard for health and safety, and Denial of healthful environment. Deemed emergent. On September 19, 2024, Grievance Officer Jacob Guetersloh reviewed this grievance and he recommended its denial. On September 27, Kevin Reichert, a subject of the grievance, concurred with Guetersloh. This appeal follows.

## Appeal

To be clear, staff informed me that CO (carbon monoxide) was the problem. I erroneously wrote "$CO_2$" in my grievance. Corrected for appeal.

Whatever the identity of the environmental toxins that are hospitalizing/harming people in North 2 and ECH at Menard C.C., I assure you it's not harming only staff members.

My grievance is centered around Anthony Wills' and Kevin Reichert's decision to house us captive individuals (humans) in these dangerous environments knowing that people are being harmed by the air. That has not changed: There has been no effort to protect the health and safety of the individuals confined in these toxic units. We have not been removed from the units. We have not been given protective mask, emergency advisories; nothing. So I maintain my request that the humans confined in these housing units be immediately removed.

Also, I maintain my complaint that both Anthony Wills and Kevin Reichert have been a long time aware of the toxic air conditions in North 2 and ECH, but have elected to turn a blind eye and stopped up nose to the health hazard. The reputation of Menard's free smoke (not "smoke free") environment and policies reaches as far as Hill Correctional

Center in Galesburg, IL where I first heard about it in the winter of 2022. So by the time I arrived at Menard (Dec. 28, 2023) and experienced it for myself, I was not surprised by the toxic air buildings and the staffs' hands off approach.

Well, the units have been allowed to become and remain dangerous to the health and safety of humans. That's due to Anthony Wills' and Kevin Reichert's policies: Do nothing. Let 'em smoke and burn.

GO Jacob Guetersloh seems to indicate that "drugs" are the reason for the toxic/hazardous air. I'm sure that's part of the problem, but that's nothing new. Menard's drug policy — the Let 'em smoke policy — is the main reason the volume of smoke in the buildings is overwhelming. This is a health-and-safety emergency largely created by the criminal negligence of the Menard administration.

Something must be done to remove the humans from these toxic units in order to secure our rights to a healthful environment (Article XI, Section 2, Illinois Constitution). And it doesn't matter whether the source of the toxic air is

Carbon monoxide (CO), drugs, burning paper, or staff smoking cigarettes in the service tunnels.— or all of the above. The air in North 2 and ECH at Menard C.C. is harmful to breathe. Excessive deployment of pepper spray contributes, too.

* **Kevin Reichert** is a clearly named subject of this grievance. So why did he choose to resolve or answer it? That's a clear violation of the 504 standard. But so is so much else that Mr. Reichert does or doesn't do; like the current toxic housing crisis in Menard. Of course, he concurred with doing nothing.

Please, remove us humans from these toxic units, and send the Illinois Department of Public Health down here to inspect and report on this public health crisis.

Respectfully submitted,

Omar Ashanti Johnson

Omar Ashanti Johnson
Grievant

**United States District Court**
**CENTRAL DISTRICT OF ILLINOIS**

Omar Ashanti Johnson )
    Plaintiff, )
  )
VS. )
  ) Case No.: 25-CV-00702-SMY
  )
Latoya Hughes, et al. )
    Defendant )

**NOTICE OF FILING**

TO: Clerk of the US Dist. Ct.
Southern District of ILLINOIS
750 Missouri Ave
East St. Louis, IL 62201

TO: _____

TO: _____

TO: _____

PLEASE TAKE NOTICE that on January 11, 2026, I have provided service to the person(s) listed above by the following means:

☐ Electronically filed through _____ Correctional Law Library

☒ Institutional mail at **NRC** (Northern Reception & Classification ~~Correctional~~) Center, properly addressed to the parties listed above for mailing through the United States Postal Service.

**DECLARATION UNDER PENALTY OF PERJURY**

Pursuant to 28 USC 1746 and 18 USC 1621, I declare under penalty of perjury that I am a named party in the above action, that I have read the above documents, and that the information contained therein is true and correct to the best of my knowledge.

Date: 1/11/26

/s/ _Omar Ashanti Johnson_
NAME: Omar Ashanti Johnson
IDOC#: K74565
Menard Correctional Center
P.O. Box 1000
Menard, IL 62259



Omar Ashanti Johnson
K74565
PO Box 1000
Menard, IL 62259

IDOC
LEGAL
MAIL

US POSTAGE ᴾᴮ PITNEY BOWES

ZIP 60434 $ 002.72⁰
02 4W
0000390873 JAN 14 2026

Legal
Mail

MAIL CLEARED
US MARSHALS

MAIL CLEARED
US MARSHALS

Clerk of the U.S. District Court
Southern District of Illinois
750 Missouri Ave
East St. Louis, IL 62201

Case 3:25-cv-00702-SMY   Document 14   Filed 01/16/26   Page 26 of 27   Page ID #74



RECEIVED
JAN 16 2026
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE